CARROLL, Judge.
By this proceeding in prohibition the petitioner Lorin Lee Furlong seeks to avoid trial on the ground of double jeopardy.
Furlong and Robert Lawrence Greenwood were charged by information with the crime of robbery. They were brought to trial together before a jury in the criminal court of record of Dade County. Opening statements by counsel were followed by testimony of the victim of the alleged robbery and that of police officer Larry E. Vitt.
After cross-examination of officer Vitt by Furlong’s attorney, and at the point where he was to be cross-examined by Greenwood’s attorney, the latter stated to the court: “Your Honor, there is a point of law that I would like to discuss. I do not know whether you want me to do it before' I start with the witness or after. I think it should be considered first, however.” Thereupon the court caused the jury and the witness Vitt to retire from the courtroom. Greenwood’s attorney then moved for severance, and in support of the motion stated: “Your Honor, I must at this point — because of certain information I have received — attempt very seriously not to prove Mr. Greenwood’s innocence as much as to prove Mr. Furlong’s guilt. Mr. Furlong is now going to be tried by two prosecutors rather than one.” Greenwood’s attorney continued, by reading quotations from a decision of a federal court which were such as to indicate that if severance was not granted then in order to throw guilt from his client and upon Furlong in certain respects Greenwood’s attorney was going to be required to *151 produce evidence of certain prejudicial admissions in regard to the matter which had been made by Furlong.
The court granted Greenwood’s motion for severance. The jurors were recalled, and were addressed by the court as follows:
“Ladies and gentlemen of the jury, in order to preserve the rights of the defendants in this trial and because of various testimony which counsel for one of the defendants has indicated is necessary to protect his client, and because such testimony — is indicated — would be prejudicial to the other defendants and because case law is clear that in such instances severances must be granted, it has become necessary for the Court at this time to grant the motion of counsel for a severance, accordingly. Therefore, ladies and gentlemen of the jury, I will declare that this trial end as a mistrial and you are therefore discharged from your duty.”
The jurors were then excused, and departed. Greenwood’s attorney submitted to the court a statement which revealed the evidence he intended to introduce, to which he had referred in moving for severance, whereupon the court announced: “Let the record show that after the discharge of the jury, that counsel for Robert Greenwood has submitted a transcript which is part of the State’s file which would show that there would be the type of conflict which counsel indicates.” Thereafter Greenwood’s attorney stated to the court: “Your Honor, you have heard the evidence now. This is not as clear-cut a case as everybody thought it was, especially what I just showed the Court, which shows that after two hours of testimony by Officer Vitt, where Officer Vitt testified that the trenchcoat was thrown by the defendant Robert Greenwood, was inaccurate. Actually, the trenchcoat was thrown by the defendant Loren Furlong and not by the defendant Robert Greenwood. Further, [Vitt testified] that the money that was recovered was taken by the defendant Robert Greenwood.”
When the trial court granted Greenwood’s motion for severance during the course of the trial of the two defendants, that necessarily called for mistrial as to Greenwood, in order that subsequently he could be tried separately as requested by his motion. The question involved here is whether the granting at that time of a mistrial also as to the codefendant Furlong (instead of proceeding with the trial as to the latter) was for a legally sufficient reason, so as to permit subsequent trial of Furlong, or was without legally sufficient reason thereby precluding his retrial on the ground of double jeopardy. For the reasons set out below, we conclude it was the latter, and that prohibition should issue.
In so deciding, we have not proceeded on the rigid ground contended for by the petitioner that to avoid double jeopardy a mistrial must have been based on “absolute legal necessity.” For that proposition the petitioner cited Allen v. State, 52 Fla. 1, 41 So. 593 (wherein it was said double jeopardy will result “if the jury are discharged for a reason legally insufficient, and without an absolute necessity for it”); State ex rel. Dato v. Himes, 134 Fla. 675, 184 So. 244 (in which the court used the phrase “legal necessity,” but quoted from a section of Corpus Juris dealing with the subject which contained the language: “manifest, urgent, or absolute necessity”) ; State ex rel. Manning v. Himes, 153 Fla. 711, 15 So.2d 613 (stating: “absolute legal necessity must exist”); State ex rel. Williams v. Grayson, Fla.1956, 90 So.2d 710 (stating: “If the jury is discharged for legally insufficient reasons and without an absolute necessity and without the defendant’s consent, such discharge is equivalent to an acquittal and precludes a subsequent trial for the same offense,” and wherein the court set out, “as illustrations,” illness requiring absence *152 of an essential participant, jury disagreement, or consent of the accused).
While having regard for those holdings, we proceed on authority of the more recent decision of the Supreme Court in Adkins v. Smith, Fla.1968, 205 So.2d 530, which reveals that the rule does not possess that degree of rigidity which the language employed in the above cited cases implies. In Adkins the court said:
“The question here under consideration was discussed by this court in State ex rel. Williams v. Grayson, Fla., 90 So.2d 710, in which it announced illustrations of urgent or necessary reasons that would justify the entry of an order declaring a mistrial. These reasons were illustrative but not exclusive. We announced the rule there that where a jury is discharged for legally insufficient reasons and without necessity and without the defendant’s consent, such discharge would preclude a subsequent trial for the same offense. But in determining what is a legally sufficient reason, the trial court must be armed with discretion since he is conducting the trial and familiar with circumstances, tensions and conditions which may be present in the courtroom. * * *
******
“ ‘ * * * We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges under their oaths of office. * * * ’ ”
Consistent therewith, the opinion in the Adkins case cited and quoted from Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901, including the following : “Where, for reasons deemed compelling by the trial judge, who is best suited intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant’s consent and even over his objection, and he may be retried consistently with the Fifth Amendment.”
In recognition and application of those principles, we must look to the circumstances of this case in which the mistrial was granted, to determine whether by a statement expressed by the trial judge, or otherwise from the record of the case, there were reasons which can be regarded as having properly been deemed by the trial judge to be of legally sufficient character for the granting of a mistrial as to the defendant Furlong, so as to permit his subsequent trial on the charge against a claim of double jeopardy.
Here the trial judge, in declaring a mistrial as to Furlong, as well as to Greenwood, who, in effect, requested it, gave no reason therefor other than because of the granting of Greenwood’s motion for severance [1].
*153 Earlier in the course of the trial Greenwood had moved for severance, and he so moved again at the point in the trial at which his motion for severance was granted. Incident to such motions Greenwood’s attorney informed the trial judge that evidence not yet introduced, but which he felt would be incumbent upon him to introduce later, would reveal conflicting positions between the codefendants and would be such as to operate to the prejudice of Furlong. However, since discharge of Greenwood from the case served to protect Furlong from a prejudice which otherwise would have resulted, the fact that Greenwood was removed as a defendant did not of itself constitute a legally sufficient reason to declare a mistrial as to Furlong.
Upon our examination of the record of the trial up to that point we do not observe any legally sufficient reason why it would have been prejudicial to Furlong to complete the case as to him, and no reason or explanation to the contrary was stated by the trial judge. The record reveals that the testimony as to identity which had come from the witnesses tended to be more positive as to Greenwood, than to Furlong. It was disclosed that Greenwood’s attorney, by cross-examination of the victim, had endeavored to show uncertainty of the witness as to whether features of identification (such as the type of coat worn and color of shoes) attributed by the witness to Greenwood, may not in fact have been applicable to Furlong. However, the substance of the direct testimony of the victim remained substantially unchanged in such respects. As between the two defendants, the testimony taken prior to the granting of the mistrial appeared stronger against Greenwood than against Furlong, although both were shown to have been present and participating. Whereupon we conclude that the record does not reveal any legally sufficient reason for granting a mistrial as to Furlong, rather than to proceed with the trial as to him, upon making proper explanation to the jury for the discharge of the defendant Furlong at that stage of the case. See Cody v. State, 237 Ark. 15, 371 S.W.2d 143.
In State ex rel. Williams v. Grayson, supra, the Supreme Court said:
“The protection of an accused against being twice put in jeopardy for the same offense is a right guaranteed by Section 12, Declaration of Rights, Florida Constitution, F.S.A. The constitutional provision is merely a recognition of a common law principle which is an inherent part of our system of justice in the enforcement of the criminal law. While to some the position of the petitioners in this matter may appear to be highly technical, it is nonetheless legally sound under our own precedents. In so holding we believe our position to be consistent with the overwhelming weight of authority on the subject. A person is placed in jeopardy when he is put upon trial under an indictment or information sufficient in form and substance to sustain a conviction before a court of competent jurisdiction and a jury has been impaneled and sworn and charged with his deliverance.”
Applicable thereto is the rule pronounced by the Supreme Court in the recent case of Adkins v. Smith, supra, that while the trial judge, due to his familiarity with the circumstances through his conduct of the trial, is armed with some discretion which will be considered in determining whether a legally sufficient reason for mistrial existed “where a jury is discharged for legally insufficient reasons and without necessity and without the defendant’s consent, such discharge would preclude a subsequent trial for the same offense.”
Accordingly, the rule nisi heretofore issued is made absolute, and judgment in prohibition is hereby rendered in favor of the petitioner against the respondent. *154 In view of the foregoing we assume the issuance of a formal writ of prohibition will not be necessary.
It is so ordered.

. In State ex rel. Dato v. Himes, 134 Bla. 675, 184 So. 244, 247, in which prohibition was granted, the court remarked: “The presiding Judge did not state of record any necessity for interrupting the trial of the felony cause, and no such necessity appears by the record here.”