830 So.2d 895 (2002)
Katisha PRUITT, Petitioner,
v.
STATE of Florida, Respondent.
No. 2D01-4385.
District Court of Appeal of Florida, Second District.
November 15, 2002.
Julianne M. Holt, Public Defender, and David D. Hendry, Assistant Public Defender, Tampa, for Petitioner.
Richard E. Doran, Attorney General Tallahassee, and Jenny Scarino Sieg, Assistant Attorney General, Tampa, for Respondent.
GREEN, Judge.
Katisha Pruitt petitions this court for a writ of prohibition alleging that the trial court is prohibited by double jeopardy principles from retrying her and therefore erred in denying her motion for discharge. This case presents a rather unique factual situation. After the jury reached its verdict (of not guilty) but before the verdict was rendered, the trial court declared a mistrial. Pruitt argues that the trial court is required by Florida Rule of Criminal Procedure 3.680 to accept the verdict. Alternatively she argues that there was no manifest necessity for the mistrial thereby entitling her to discharge. We deny the petition with prejudice because rule 3.680 is inapplicable and because Pruitt's counsel consented to the mistrial.
Pruitt went to trial on the charge of possession of cocaine. It was discovered after the jury reached a verdict but before that verdict was rendered that the alternate juror accompanied the jurors to the jury room to deliberate. When advised of these facts the trial court inquired of counsel for the State and defense whether they *896 thought a mistrial should be granted. Defense counsel responded that a mistrial would be appropriate. The State asked for a recess in order to research the issue. After the recess the State agreed to the mistrial and defense counsel stood mute. The jury was then brought into the courtroom, the judge asked them if they had reached a verdict, took the verdict form, and then announced the mistrial. After announcing the mistrial, the trial judge read the not guilty verdict.
Pruitt first argues that she is entitled to entry of the not guilty verdict pursuant to rule 3.680 which provides:
JUDGMENT ON INFORMAL VERDICT
If a verdict is rendered from which it can be clearly understood that the jurors intended to acquit the defendant, a judgment of not guilty shall be rendered thereon even though the verdict is defective. No judgment of guilty shall be rendered on a verdict unless the jurors clearly express in it a finding of guilt of the defendant.
The trial court denied this claim essentially finding that the mistrial was granted before the verdict was rendered. The State argues, and we agree, that rule 3.680 is inapplicable for that reason. A verdict is rendered when it has been accepted by the judge, announced, and filed with the clerk. See Keene Bros. Trucking, Inc. v. Pennell, 614 So.2d 1083 (Fla.1993). In this case the mistrial was granted before the verdict was rendered, and the rule does not afford Pruitt any relief.
Pruitt next argues that there was no manifest necessity for the mistrial and that therefore her retrial is barred by double jeopardy. Pruitt is correct that where a jury is discharged without the defendant's consent and without absolute necessity, the discharge is equivalent of an acquittal and precludes retrial. See Spaziano v. State, 429 So.2d 1344, 1345 (Fla. 2d DCA 1983). The trial court denied the motion as to this point finding that there was manifest necessity for the mistrial. We need not reach that issue however because the record demonstrates that Pruitt affirmatively consented to the mistrial when her counsel agreed that a mistrial would be appropriate. See Adkins v. Smith, 205 So.2d 530 (Fla.1967).
We therefore deny the petition with prejudice.
DAVIS, J., Concurs.
KELLY, J., Concurs in part and dissents in part.
KELLY, Judge, Concurring in part and dissenting in part.
I concur with the majority's conclusion that Florida Rule of Criminal Procedure 3.680 is inapplicable in this matter. I cannot, however, agree with the majority's conclusion that Pruitt's retrial is not barred by double jeopardy.
Jeopardy attaches in a criminal case when the jury is impaneled and sworn. Allen v. State, 52 Fla. 1, 41 So. 593, 594 (Fla.1906). Thus, the double jeopardy clause not only protects an accused from retrial after being acquitted but also gives a defendant a "valued right" to have her trial completed by a particular jury. Thomason v. State, 620 So.2d 1234, 1237 (Fla. 1993). This right is valued because a defendant has "a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of mistrial." Id. (quoting United States v. Jorn, 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971)). Even when judicial or prosecutorial error occurs, a defendant may still wish to go to the jury *897 in the hope that the case will end in an acquittal. Id.
When a trial court sua sponte declares a mistrial without the defendant's consent, the defendant is deprived of her "valued right" to have her trial completed by a particular tribunal. Jorn, 400 U.S. at 484, 91 S.Ct. 547. The double jeopardy clause protects this interest by requiring that a trial judge declare a mistrial without the consent of the defendant only after it determines that a mistrial is a manifest necessity. Id. at 485, 91 S.Ct. 547. If a defendant consents, however, manifest necessity is not a consideration. United States v. Puleo, 817 F.2d 702, 705 (11th Cir.1987). In my view, the record in this case fails to demonstrate either consent or manifest necessity.
The doctrine of manifest necessity requires the trial court to explore all possible alternatives before declaring a mistrial. Thomason, 620 So.2d at 1239-40. Here, the trial court apparently believed that a mistrial was the only viable alternative, and it proceeded to declare a mistrial even though Pruitt's counsel had asked for an opportunity to confer with Pruitt and even though Pruitt was not present in the courtroom. Although a defendant is entitled to a mistrial if an alternate participates in deliberations, a defendant may waive this defect in the proceedings. Sloan v. State, 438 So.2d 888, 890 (Fla. 2d DCA 1983). Because the trial court did not explore that alternative with Pruitt, it did not meet the requirement of manifest necessity.
Because there was no manifest necessity to declare a mistrial, the determinative issue becomes whether Pruitt consented to the mistrial. While some jurisdictions require a defendant to object to a court's sua sponte declaration of a mistrial and will infer consent from a defendant's silence when the defendant has had an opportunity to object,[1] Florida has rejected that approach. Allen, 52 Fla. at 4, 41 So. at 594. Instead, Florida has aligned itself with those courts that look at the totality of the circumstances attendant to the declaration of a mistrial to determine whether a defendant consented to a mistrial.[2]
In State ex rel. Williams v. Grayson, 90 So.2d 710 (Fla.1956), the defendants made several motions for a mistrial, and the court denied each motion. Later, after having time to reflect, the State announced that it wished to "join" in the defendants' motions. One of the defendants' attorneys stated in response: "We have no objection your honor." Id. at 712. The trial judge raised the issue of double jeopardy and stated that he did not believe it would be an issue. A second lawyer for the defendants responded that he assumed it would not be a problem but he "wouldn't bind [himself]." The State also noted that it assumed that a mistrial would not implicate double jeopardy. At this point the court declared a mistrial.
When the case was again set for trial, the defendants objected to being tried again based on double jeopardy. In their petition for a writ of prohibition to the supreme court, the defendants argued that the mistrial was tantamount to an acquittal and that they could not be placed in jeopardy again. The State argued that the defendants had consented. After noting that a defendant's silence or failure to *898 object to a mistrial did not constitute a waiver or consent, the court stated that it would "look to the immediate record to determine whether the accused consented...." Id. at 714.
In concluding that the circumstance reflected in the record did not show that the defendants "affirmatively consented," the court pointed out that while one of the defendants' attorneys stated he had no objection to the mistrial, another said he would not bind himself to his assertion that double jeopardy was not an issue. Id. The court found that this statement, together with the concerns that parties had expressed regarding double jeopardy, precluded it from finding that the defendants consented. Id.
The record in this case reflects that after the jury reached a verdict, the trial judge realized that he had never dismissed the alternate juror. The judge advised counsel of this fact and stated: "We think the alternate probably participated in the deliberations, in which case we may have a mistrial. So he's [the bailiff] outside looking at that." When the bailiff returned, he reported to the judge that the alternate, while present in the jury room, had not participated in the deliberations. At this point the court again summoned counsel to the bench where he stated, "[s]he was present, she did not participate. Does anybody agree that anything other than a mistrial should be granted?" Only one of Pruitt's three attorneys was present, and she responded: "Yes, Judge, I think that would be appropriate." The court then went on to state that it did not know what else it could do other than declare a mistrial. At this point, counsel for the State expressed uncertainty as to whether a mistrial was necessary and requested time to research the issue. The trial court agreed and continued the case until later in the day.
When the court reconvened, the State advised the court that there was "no way around" granting a mistrial. Two of Pruitt's attorneys were present at this time and neither commented regarding the necessity of a mistrial. Without conferring with Pruitt's counsel and without exploring any alternatives, the judge advised the parties that he intended to declare a mistrial. Again, Pruitt's attorneys said nothing. The judge had the jurors brought into the courtroom. Before the judge could address the jury, Pruitt's attorneys asked to approach the bench. They asked the judge to allow them time to speak with their client and their client's mother, neither of whom were present in the courtroom. The judge refused stating: "Okay well, I don't knowwhat is the error that would occur if it is a mistrial? SeeIthat's unfortunate. Thank you."
At this point the judge had the jury deliver its verdict to the bailiff who in turn delivered it to the judge. The judge then explained the situation to the jury, and with Pruitt still absent from the courtroom, he declared a mistrial. The court then began to elaborate on the situation, and in the course of doing so stated: "The record should reflect that the jury did in fact return a verdict of not guilty in the case, but as you know that verdict will not stand."
I cannot reconcile the majority's conclusion in this case with the supreme court's decision in Williams. As in Williams, the State expressed concerns regarding declaring a mistrial, as did the trial court. In each case, one of the defendant's attorneys made a comment that could be viewed as agreeing with the mistrial, but a second countered with remarks that could *899 be viewed as a "red flag" warning.[3] Just as the court in Williams did not isolate the statement, "I have no objection" and end its inquiry there, this court should not isolate a single statement made by one of Pruitt's attorneys and end its inquiry there.
Given the importance that has been placed on a defendant's right to have her trial completed by a particular jury and the "significant interest" of the defendant in the decision whether to take a case from the jury, any doubt as to whether a defendant has consented should be resolved in favor of the defendant. Cf. Thomason, 620 So.2d at 1237 (stating, "Doubt about whether the mistrial is appropriate is resolved in favor of the liberty of the citizen"). The circumstances in this case are at least as ambiguous as those in Williams. Accordingly, I would resolve any doubt in Pruitt's favor and conclude that she did not consent to the mistrial.
NOTES
[1] See, e.g., United States v. Puleo, 817 F.2d 702 (11th Cir.1987) (holding that where the trial judge expressed a clear intent to declare a mistrial and the defense counsel had an opportunity to object but did not, consent would be implied).
[2] See, e.g., United States v. Smith, 621 F.2d 350 (9th Cir.1980); United States v. Goldstein, 479 F.2d 1061 (2d Cir.1973); Jones v. Hogg, 732 F.2d 53 (6th Cir.1984).
[3] In fact, it appears that the trial court did view it as a "red flag" but proceeded anyway.